406 F.Supp. 984 (1975)
MISSOURI PORTLAND CEMENT COMPANY, Plaintiff,
v.
H. K. PORTER AND COMPANY, INC., et al., Defendants.
No. 75-1027C(A).
United States District Court, E. D. Missouri, E. D.
December 18, 1975.
*985 Davis, Polk & Wardwell, New York City, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Wachtell, Lipton, Rosen & Katz, New York City, Guilfoil, Symington & Petzall, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
HARPER, Senior District Judge.
Plaintiff, Missouri Portland Cement Company (hereinafter referred to as Missouri), instituted this action on December 8, 1975, by Verified Amended Complaint in a second attempt to block a revised cash tender offer for Missouri stock. On November 6, 1975, defendants, H. K. Porter Company, Inc. (hereinafter referred to as Porter), Thomas Mellon Evans (hereinafter referred to as T. M. Evans), and Edward P. Evans, announced their first tender offer for 500,000 shares of Missouri common stock at $24 per share. This tender offer was to commence on November 7, 1975, and was to expire on November 17, 1975. However, in opposition to Porter's first tender offer, Missouri requested and was granted an order to show cause with temporary restraining order on November 10, 1975. On November 20 and 21 of 1975, this Court held hearings on Missouri's order to show cause to determine if a preliminary injunction should issue.
On November 26, 1975, this Court entered its memorandum opinion and order which granted to Missouri a preliminary injunction and directed the defendants to withdraw Porter's tender offer of November 7, 1975, for the following violations *986 of Sections 14(e) and 14(d)(5) and (6) of the Securities & Exchange Act of 1934: First, Porter made an untrue statement of material fact when it stated that its purpose in acquiring 500,000 additional shares of Missouri's outstanding stock was to increase Porter's investment in Missouri and did not disclose its intent to become the controlling shareholder of Missouri; second, Porter's reference to unpublished criteria of the New York Stock Exchange regarding listing of additional shares constituted a second untrue statement which was material; and third, Porter's initial tombstone publications and use of a 1974 shareholder mailing list for a 1975 tender offer were inadequate. Furthermore, this Court recognized that Porter clearly had the right to amend its offers to cure defects, and then rely upon those amendments to satisfy the requirements of Section 14(e) of the Securities & Exchange Act of 1934 as amended by the Williams Act of 1968.
Thereafter, on December 1, 1975, the defendants filed with this Court two motions seeking Missouri's current shareholder list and also the Court's approval of its amended tender offer for the 500,000 shares of Missouri common stock. This case was temporarily transferred to the court of Judge James H. Meredith, who subsequently ruled upon those two motions. In his order of December 2, 1975, Judge Meredith found that Porter was entitled to a current list of Missouri stockholders and that Porter's revised tender offer cured the misrepresentations as pointed out in the order of this Court filed on November 26, 1975. He further found that the Missouri shareholders who had already tendered approximately 112,000 shares would be entitled to withdraw their tendered shares in response to this offer and to accept the new offer if they so desired; otherwise their stock would be returned. Also, the transmittal letter to Porter should contain a space so that those shareholders who had already tendered could withdraw "immediately" in the event they chose not to accept the new tender offer. Thereafter, Judge Meredith ordered that the defendants were permitted to make a new tender offer in accordance with the motion and attachments filed with the Court, and the new offer should be mailed to all Missouri shareholders on the current shareholder list which was to be provided by Porter. Furthermore, prior to the mailing, the defendants should file with the Court a complete set of all documents to be mailed both to all stockholders and those who had already accepted the original tender offer.
On December 3, 1975, the defendants filed the complete set of documents with this Court to comply with Judge Meredith's order. Porter's new tender offer was for 500,000 shares of Missouri common stock at $26 per share and was to run from December 9, 1975, until December 19, 1975. However, on December 8, 1975, Missouri filed with this Court a Verified Amended Complaint seeking an injunction, exemplary damages in the amount of one million dollars, counsel fees, and such other and further relief as the Court deemed just and proper.
Missouri alleges violations of the "Williams Act", specifically Sections 13(d), 14(d) and 14(e) of the Securities & Exchange Act of 1934, 15 U.S.C. §§ 78m(d), 78n(d) and (e), and the Rules and Regulations of the Securities & Exchange Commission promulgated thereunder. Missouri also alleges violations of Sections 7 and 16 of the Clayton Act, 15 U.S.C. §§ 18 and 26.[1] This Court has jurisdiction under 15 U.S.C. §§ 26 and 78aa, as well as under 28 U.S.C. §§ 1331 and 1337.
On December 8, 1975, this Court ordered the defendants to appear in the United States District Court for the Eastern District of Missouri, Eastern Division. On December 10, 1975, to show cause why a preliminary injunction should not be issued against them in accordance *987 with the plaintiff's verified amended complaint.
Thereafter, on December 10, 1975, this Court held a hearing to determine if a preliminary injunction should issue.
Missouri has alleged six violations of Sections 14(e) and 13(d) of the Williams Act: First, the terms of a proposed merger of Missouri with Chromalloy American Corporation (hereinafter referred to as Chromalloy) should be disclosed in Porter's tender offer; second, the defendants have attempted to minimize and conceal the right of Missouri shareholders, who have previously tendered, to have their shares returned immediately; third, the defendants wrongfully misrepresented that under published guidelines of the New York Stock Exchange the Missouri stock may be delisted if defendants' tender offer is successful; fourth, in their revised tender offer the defendants misrepresented their intent to participate in the conduct of Missouri's business; fifth, in their letter to Missouri shareholders as to the revised tender offer, the defendants have omitted to disclose the terms of this Court's ruling as to the previous unlawful tender offer; and sixth, the defendants have violated Section 14(e) of the Williams Act by failing to disclose their history of antitrust violations and convictions. It should be noted at the outset that each of these claims was presented to Judge Meredith during oral argument in the hearing of December 2, 1975. However, those six arguments were rejected at that time because Porter's revised tender was permitted to be offered to all Missouri shareholders in its existing form.
In order to justify the issuance of a preliminary injunction, the movant has the burden of showing: (1) Substantial probability of success at trial by the moving party, and (2) irreparable injury to the moving party absent such issuance. Minnesota Bearing Company v. White Motor Corporation, 470 F.2d 1323, 1326 (8th Cir. 1973).
The credible testimony and exhibits produced at the hearing before this Court, disclose that on November 21, 1975, Missouri and Chromalloy signed an agreement in principle with respect to what is referred to by the plaintiff as a proposed merger of Missouri into Chromalloy (Plaintiff's Exhibit 107). On November 24, 1975, Missouri announced in a press release (Plaintiff's Exhibit 108) that the Board of Directors of Missouri and Chromalloy had approved an agreement in principle for Missouri to be merged into Chromalloy, and on the same date mailed to each of Missouri's stockholders a letter (Exhibit A attached to the Verified Amended Complaint), and enclosed a copy of the press release but Exhibit 107 was not enclosed. The general terms of the agreement in principle (Plaintiff's Exhibit 107) were purported to be stated in the press release.
At the hearing the chief executive officers of Missouri and Chromalloy testified that they were both committed to this transaction and anticipated it would be approved by the stockholders. However, the chief executive officer of Missouri and the other officers and directors of Missouri hold less than ten percent of Missouri's outstanding stock and Porter is Missouri's largest stockholder (21 plus .%).
The plaintiff at the hearing and in its brief refers to the tentative agreement as a merger proposal.
Missouri's principal contention is that the defendants' revised tender offer does not disclose to Missouri shareholders the terms of Missouri's proposed merger with Chromalloy and such an omission constitutes a violation of Section 14(e) of the Williams Act. It is undisputed by the parties that the terms of a competing definite merger or tender offer with respect to a corporation are material facts which should be disclosed to all shareholders who might choose between the two alternatives. United States Smelting, Refining & Mining Co. v. Clevite Corp., CCH Fed.Sec.L.Rep., Par. 92, 691 (N.D.Ohio, 1968).
However, parties are not required to disclose those plans or designs which are necessarily contingent or indefinite. *988 Nicholson File Company v. H. K. Porter Co., 341 F.Supp. 508, 520 (D.R.I.1972), affirmed, 482 F.2d 421 (1st Cir. 1973), Susquehanna Corp. v. Pan American Sulphur Co., 423 F.2d 1075, 1085 (5th Cir. 1970).
Porter does make reference to the proposed Missouri and Chromalloy merger in its revised tender offer,[2] but Missouri claims the degree of detail used in those references is not sufficient to satisfy Section 14(e) of the Williams Act.
An examination of the agreement (Plaintiff's Exhibit 107) leads the Court to the conclusion that the agreement constitutes a mere "tentative proposal", and as such is tentative at best and is not definite in its terms.
The conditional nature of this claimed proposed merger is emphasized at page 3 of the press release.
While the "proposed" merger is described quite attractively in the accompanying cover letter, the letter concludes on a less than definitive note:
"Since the transaction will be subject to stockholder approval and other conditions, more detailed information will be forwarded for your consideration at a later date."
The actual status of the merger is stated in the "agreement in principle" (Plaintiff's Exhibit 107), which was not sent out to Missouri stockholders.
The entire agreement is replete with conditions, and in fact is "inconclusive". This is not a final definitive merger agreement.
The first paragraph of the tentative agreement reads as follows:
"This letter will confirm the intentions of Chromalloy American Corporation (Chromalloy) and Missouri Portland Cement Company (The Company) as to the proposed merger of the Company into Chromalloy or one of its subsidiaries." (Emphasis added.)
Proposed mergers are definite as to which companies will be merged, and this agreement is clearly not, as it refers to Chromalloy or one of its subsidiaries. The letter continues on page 1 as follows:
"Our intentions are as follows:
"1. A definite agreement will be adopted and entered into by Chromalloy, its subsidiary (if applicable) and the Company providing for the acquisition by Chromalloy or its subsidiary * * *." (Emphasis added.)
In paragraph 1 (ii) and paragraph 1 (iii) Missouri is given the right to withdraw from the negotiations unless Chromalloy agrees to issue a stated number of shares. In paragraph 1 (iv) Missouri assures Chromalloy that there will be no charge in outstanding shares "to the date the merger contemplated herein is either consummated or abandoned". (Emphasis added.)
Paragraph 2 states that the specified exchange ratio is based partially upon "unaudited earnings reports" and assumes that the condition of Chromalloy and Missouri and the results of their operations will undergo "no adverse change from September 30, 1975, through the Closing Date of the merger."
Paragraph 4 states that the "consummation of the transaction shall be subject to seven different conditions, such as "* * * negotiation, execution and delivery of a definitive Agreement satisfactory to the parties" (emphasis added), and the absence of material adverse changes in the condition of either company or in the results of their operations after September 30, 1975.
Paragraph 6 refers to a "* * * complete investigation of the other party's business, operations, facilities and financial affairs * * *."
Paragraphs 9 and 10 begin with the prefatory language, "If the merger is *989 consummated * * *." Finally, the "Agreement in principle" concludes:
"Please indicate your confirmation and approval of the foregoing statement of intention, which intention is subject in all respects to the execution and delivery of the definitive Agreement. This letter is not an offer to purchase your company or an agreement with respect thereto. Neither party shall have any liability nor in any way be committed to the other on account of the proposed transaction unless a definitive Agreement is executed by an authorized officer, and approved by the Boards of Directors and shareholders of the Company and Chromalloy, and thereafter any liability shall be under the terms of the definitive Agreement." (Emphasis added.)
This Court finds that the agreement in principle (Plaintiff's Exhibit 107) constituted only a tentative agreement which it was anticipated would lead to a definitive agreement that would be a merger proposal between Missouri and Chromalloy or one of its subsidiaries. Since it was not a merger agreement, it did not have to be set forth in some detail in the tender offer.
Second, Missouri contends that the defendants' revised tender offer was misleading because it failed to clearly inform those Missouri shareholders who had already tendered that they had a right to immediate withdrawal, and the tender offer thereby fails to comply with Judge Meredith's order of December 2, 1975.
The plaintiff alleges that the following statement contained in the defendants' revised tender offer is misleading to Missouri shareholders:
"On November 7, 1975, Porter announced an Offer to Purchase 500,000 shares of Missouri for cash at $24 per share net. That offer has been withdrawn and all shares tendered pursuant thereto will be returned to such Missouri shareholders if the Depositary (The First National Bank of Chicago, Corporate Trust Division, One First National Plaza, Chicago, Illinois 60690) does not receive an executed Letter of Transmittal pursuant to this Offer prior to the Expiration Date hereof or any extension thereof. See Paragraph 12 under `Additional Information' below."
A letter to the shareholders who have previously tendered accompanies the revised tender offer and it advises that: "* * * you may either have the stock returned to you or you may tender it under the new offer."
The letter continues:
"If you wish to withdraw your shares immediately, you may do so by executing the letter of transmittal appropriately and forwarding it to the above Depository in the envelope herein provided." (Defendants' Exhibit G.)
The Court finds that these words in the letter which accompanies the revised tender offer comply with Judge Meredith's order of December 2, 1975, and they fairly disclose to the Missouri shareholders who have already tendered that they have a right to withdraw those shares immediately.
Third, Missouri claims that the defendants wrongfully misrepresented that under the published guidelines of the New York Stock Exchange the Missouri stock may be delisted if the defendants' tender offer is successful. In both their first and revised tender offers, the defendants included the following statement:
"Depending on the number of shares tendered and purchased pursuant to this offer, the common stock may no longer meet the requirements of the New York Stock Exchange for continued listing and may therefore be delisted. Published guidelines of the New York Stock Exchange indicate that the Exchange would consider delisting if the number of publicly held shares was less than 600,000 or if there were fewer than 1,200 holders of 100 or more shares (round lot holders) or if the market value of the publicly held shares did not exceed $5,000,000. At *990 December 31, 1974, Missouri reported approximately 5,449 record holders of Common stock." Paragraph 11 of Porter's Offer to Purchase dated December 9, 1975.
However, the Company Manual of the New York Stock Exchange (Attachment B to defendants' brief) sets forth guidelines with respect to the continued listing of a Company's securities. In summary, those guidelines indicate that the Exchange would consider delisting (a) if the number of publicly held shares was less than 600,000 or (b), if there were fewer than 1,200 holders of 100 shares or more, or (c) if the market value of its publicly held shares did not exceed $5,000,000. There was testimony and evidence produced at the hearing on November 20, 1975, which indicated that while (a) and (c) above are inapplicable to Missouri's present status, "(b)", while remote, is nevertheless a possibility. Information with respect to the New York Stock Exchange is material if it is "sufficiently appreciable to require disclosure. Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247, 254 (2nd Cir. 1973). Therefore, Porter's disclosure was proper.
Fourth, Missouri contends that the defendants' revised tender offer misrepresents their intent to participate in the conduct of Missouri's business. Again, in both their original and amended tender offers, the defendants included the following language:
"In the event 500,000 shares of Missouri's common stock are purchased hereunder Porter has no present plans or proposals to exercise day-to-day operating control of Missouri's business, to liquidate it, sell its assets, merge it with any other entity or make any other change in its business or corporate structure; nor does Porter presently have any intention to make any changes in Missouri's management or to seek representation on Missouri's Board of Directors. Because Missouri's By-Laws provide for a classified Board of Directors currently consisting of twelve directors, four of whom are elected for three-year terms at each annual meeting, and its Certificate of Incorporation provides for cumulative voting in the election of Directors, even if Porter acquires 500,000 shares pursuant to this offer and subsequently seeks Board representation, Porter might not be able to elect Board representation consistent with its stock position until the third annual meeting following this Offer unless Porter were to seek and obtain appropriate modification to Missouri's By-Laws so as to eliminate the classification of the Board of Directors. Porter has no present plan or intention to take any such action."
This language, Missouri contends, is inconsistent with T. M. Evans' testimony of November 20, 1975, wherein he stated that it is the defendants' intention to participate in management decisions as a stockholder.
This Court finds that the defendants' quoted intentions from its revised tender offer are not misrepresentations but rather are accurate statements at this present time. As the controlling shareholder, however, Porter would be entitled to vote its shares as it wishes and it would not contradict its intentions as are stated in the revised tender offer.
Fifth, Missouri asserts that in their letter to Missouri shareholders the defendants omitted to disclose the terms of this Court's ruling with respect to the defendants' previous unlawful tender offer. However, this Court finds that paragraph 12 of the defendants' revised tender offer adequately apprises Missouri shareholders of this Court's preliminary injunction and the reasons therefor.
Finally, Missouri claims that the defendants have violated the Williams Act because they failed to disclose their history of antitrust violations and convictions.
The Securities & Exchange Commission requires that a person filing a Schedule 13D must disclose all of that person's criminal convictions which occurred during the ten-year period immediately *991 prior to the filing of the Schedule 13D. CCH Fed.Sec.L.Rep. ¶ 26,852, Note B, Item 2(e). In their tender offer of December 9, 1975, the defendants have disclosed Porter's plea of nolo contendere in response to a criminal indictment filed by the United States of America in the United States District Court for the Eastern District of Louisiana charging Porter with violations of the Sherman Act. That Court subsequently imposed a fine of $50,000 which was paid by Porter on July 1, 1974. While Missouri produced, at the hearing on December 10, 1975, evidence of various civil antitrust actions pending against Porter, various consent decrees entered into by Porter in the antitrust area, various obsolete criminal convictions by Porter of the Sherman Act and recent criminal convictions for Sherman Act violations by Crane Co. (of which T. M. Evans is chairman and chief executive officer), Missouri has failed to show that Porter did not disclose a criminal conviction, antitrust or otherwise which resulted in the past ten-year period. The defendants have disclosed all of Porter's criminal convictions of the past ten years, and any further disclosures sought by the plaintiff are not required.
The plaintiff has filed in its burden of showing a substantial probability of success at a subsequent trial with respect to any of its six claims.
Accordingly, for the above reasons, plaintiff's motion for preliminary injunction is denied.
The Court adopts this memorandum opinion as its findings of facts and conclusions of law, and the clerk of the Court is directed to prepare and enter the proper order as set out above.
NOTES
[1] In its proof at the hearing and in its subsequently filed briefs, Missouri relies solely upon the six claims stated herein.
[2] In its revised tender offer, Porter states at page 1, paragraph 3 that: "(other than the proposed merger of Missouri and Chromalloy American Corporation which merger Porter intends to oppose)", and at page 5, paragraph 4, Porter again states that: "Porter intends to exercise its right as a shareholder to oppose the proposed merger of Missouri into Chromalloy American Corporation."