**EDUDATA CORPORATION, Plaintiff,**

v.

**SCIENTIFIC COMPUTERS, INC., Hubert H. Humphrey, III, Attorney General of the State of Minnesota, and Michael A. Hatch, Commissioner of Commerce of the State of Minnesota, Defendants.**

**SCIENTIFIC COMPUTERS, INC., a Minnesota corporation, Plaintiff,**

v.

**EDUDATA CORPORATION, a Delaware corporation, Shamrock Associates, a New Jersey Limited Partnership, Sun Equities Corporation, a Delaware corporation, and Paul Koether and Natalie Koether, Residents of New Jersey, Defendants.**

Civ. Nos. 4–84–968, 4–84–978.

United States District Court, D. Minnesota, Fourth Division.

Sept. 28, 1984.

Theodore Altman, Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Wein, New York City, Thomas E. Glennon and Richard Primuth, Lindquist & Vennum, Minneapolis, Minn., for Edudata Corp.

Roger Magnuson and Linda Freyer, Dorsey & Whitney, Minneapolis, Minn., for Scientific Computers, Inc.

Barry Greller, Asst. Atty. Gen., St. Paul, Minn., for Hubert H. Humphrey, III and Michael A. Hatch.

## ORDER

DIANA E. MURPHY, District Judge.

These companion cases arise from a tender offer commenced by Edudata Corporation (Edudata), a Delaware corporation, on September 20, 1984, for all outstanding shares of the common stock of Scientific Computers, Inc. (SCI), a Minnesota corporation.

Edudata filed a verified complaint against SCI, Hubert Humphrey III, Attorney General of Minnesota, and Michael A. Hatch, Commissioner of Commerce in Minnesota, in this court on the same day. Edudata seeks a judgment declaring that certain recently-enacted provisions of the Minnesota Corporate Take-Overs Act, Minn. Stat. Ch. 80B, and the Minnesota Business Corporation Act, Minn.Stat. §§ 302A.011, subd. 37, 38, 39; 302A.449, subd. 7 and 302A.671, are unconstitutional as applied to Edudata's tender offer and are preempted by the "Williams Act", 82 Stat. 454, *et seq.* codified at 15 U.S.C. §§ 78m(d)–(e) and 78n(d)–(f), amendments to the Securities Exchange Act of 1934. The complaint also requested temporary, preliminary and permanent injunctive relief restraining SCI from enforcing the above provisions of Minnesota law and from commencing any judicial proceeding relating to these laws in any other forum. Jurisdiction is alleged under 28 U.S.C. §§ 1331(a), 1332, 1337(a), 1343(3) and (4), and 15 U.S.C. § 78aa.

SCI filed a verified complaint in this court on September 26, 1984 against Edudata, Shamrock Associates (Shamrock), Sun Equities Corporation (SECC), Paul Koether and Natalie Koether. SCI also bases part of its claim on violations of the Williams Act. In addition, it charges violations of the Minnesota Business Corporation Act, the Minnesota Corporate Take-Overs Act, and fraud. Jurisdiction is alleged under 15 U.S.C. § 78aa, 28 U.S.C. §§ 1331, 1332 and pendent jurisdiction.

These matters are now before the court upon motions of Edudata and SCI for temporary restraining orders and upon SCI's motion to expedite discovery.

In addition to the actions commenced in this court, the parties are involved in state judicial and administrative proceedings. On September 24, Michael Hatch, the Minnesota Commissioner of Commerce, issued an Order suspending the registration by Edudata of its tender offer pursuant to Minn.Stat. § 80B.03 subd. 4a. Hatch found that the takeover materials did not provide full disclosure of all material information

as Edudata failed to specify its future plans concerning the target company (SCI), to identify adequately Edudata's background and affiliates and to specify any potential liability Edudata may have due to misstatements or omissions of material fact made in its public offering of July 1984. Hatch also ordered a hearing on October 4, 1984 to determine whether the suspension shall be terminated or made permanent. Edudata asks this court to set aside Hatch's order suspending its tender offer.

SCI has also initiated a suit in state court against Edudata and Craig-Hallum, Inc., a Minnesota corporation. On September 26, 1984, Judge Irving Iverson issued a temporary restraining order in that action, enjoining defendants from proceeding with, causing or aiding and abetting the tender offer by Edudata to purchase shares of SCI from residents of Minnesota or engaging in any activities in furtherance of the tender offer, and from accepting tenders of shares of SCI stock. Judge Iverson also enjoined Edudata from consummating the control share acquisition of SCI prior to a special shareholders meeting which, pursuant to Minn.Stat. § 302A.671, subd. 3 (1984), has been called for November 15, 1984.

At the hearing before this court on September 26, 1984, the parties addressed the effect of this state court order. Counsel for Edudata stated that the case was being removed to this court, but SCI's counsel responded that removal is improper because there is not complete diversity. SCI asserts that a federal restraining order is needed to enjoin Edudata from proceeding nationally since the state order only protects Minnesota citizens.

## DISCUSSION

■ Whether temporary injunctive relief may be granted is determined by consideration of four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Data-*

*phase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981).

Edudata argues that enforcement of the Minnesota statutes will cause immediate irreparable injury, not only to Edudata and its shareholders, but also to SCI and its shareholders, no matter what approach Edudata takes. If it abandons its tender offer, it will be deprived of its right under the Williams Act to make a national tender offer. Yet, if Edudata proceeds with its tender offer in disregard of Minnesota law, it may be subject to criminal and civil penalties, and the validity of tenders and ownership of SCI stock may be in doubt. Finally, Edudata argues that compliance with the Minnesota statutes could result in civil liabilities for failure to comply with federal law, unreasonable delay, commitment of substantial amounts of money to prepare and participate in the hearing provided for by the Minnesota law, and disruption of the market in securities of SCI.

Edudata argues that other prerequisites of injunctive relief are also satisfied. It alleges that SCI will suffer no harm by suspension of the Minnesota statutes because the Williams Act serves the same purpose of investor protection; that success on the merits is "virtually certain"; and that the public interest is best served by allowing Edudata to proceed with its federally protected rights, thus offering SCI shareholders and the investing public a unique investment opportunity.

The major thrust of Edudata's motion is devoted to its chances of success on the merits. It relies heavily on *Edgar v. Mite Corporation,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), and *National City Lines Inc. v. LLC Corp.,* 687 F.2d 1122 (8th Cir.1982), for the proposition that the Minnesota statutes are unconstitutional and preempted by federal law. It argues that the October 4 hearing before Commissioner Hatch is precisely the type of disruption found to be unconstitutional in *Mite* and *National City Lines.*

The state defendants argue that both cases are distinguishable and that the Minnesota legislature was aware of both cases

and crafted Minn.Stat. § 80B—the only provision properly before the court—to avoid the problems presented there. It points out that the Illinois Act struck down in *Mite* contained three key provisions which are not part of the Minnesota statute: 1) a precommencement notification period requirement, 2) a hearing procedure with no strict time deadlines, and 3) a procedure where the Secretary of State would pass on the substantive fairness of the tender offer.

At the hearing, SCI opposed Edudata's motion for constitutional and practical reasons. It argued that this matter is not ripe for constitutional resolution. The Commissioner of Commerce is currently expanding the factual record with his investigation and his subsequent action may moot the constitutional question. Although Edudata seeks to prohibit SCI from bringing any other proceeding in another forum, SCI has already filed a state court claim. SCI argues that the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and considerations of comity prevent this court from enjoining those pending state court's proceedings.

SCI also alleges that Edudata appears to be a shell corporation with three employees, no management experience and limited assets before its public offering in July, 1984. SCI asserts that Edudata has conspired, with the Koethers, Shamrock and SECC, to take over SCI through a series of fraudulent disclosures and material omissions and to loot it of its assets. SCI contends that it will suffer irreparable injury if the shares tendered in response to Edudata's offer are transferred in that, among other things, Edudata will have acquired effective control of SCI; the price and liquidity of the public market for SCI stock will drop; SCI's long-standing customer/supplier relationships may be destroyed; and many SCI employees may either lose their jobs or their innovative spirit.

The court recognizes that important interests are at stake on all sides of this dispute. Delay is a potent weapon in a

tender offer fight, at times enabling entrenched management to defeat what may be a beneficial tender offer to shareholders and targeted company alike. On the other hand, federal and state policy favors adequate disclosure so that shareholders and investors may make informed decisions. Serious constitutional issues have been raised, as well as serious allegations of violations of federal and state law. The state law challenged by Edudata differs from that at issue in *Mite* and *National City Lines*. Further development of the parties' legal positions and the record is necessary before the court can determine the likelihood of success on the merits in these actions.

The public interest would be furthered by full disclosure of all material information concerning Edudata's tender offer. One of the main goals of the Williams Act is to protect shareholders and investors by furnishing them with the necessary information required to exercise an informed choice.[1] *Edgar v. Mite,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). Commissioner Hatch used almost identical criteria as in the Williams Act to determine that Edudata's tender offer materials do not provide full disclosure of key information concerning Edudata's background, affiliates, and future plans. SCI and the state defendants have made a sufficient showing to justify delaying this tender offer to permit closer examination of the offering disclosures. Injunctive relief may be appropriate pending determination whether federal law requires additional disclosures or until all necessary information is disclosed. *See Pacific Realty Trust v. APC Investments,* 685 F.2d 1083 (9th Cir.1982); *Whittaker Corporation v. Edgar,* 535 F.Supp. 933 (D.C.Ill.1982).

■ Although both parties claim irreparable harm, the court finds that the balance of harm favors SCI and that a temporary restraining order should issue suspending Edudata's tender offer pending further hearing. This will obviously delay Edudata's tender offer to its disadvantage, but Edudata has not shown that its harm is irreparable. Moreover, a restraining order will protect Edudata from the criminal and civil penalties it fears because of any possible conflict between state and federal law. Edudata claims that SCI shareholders would be irreparably harmed by a delay or defeat of its offer, but shareholders could also be harmed by false or misleading disclosures. SCI claims it would be irreparably harmed if effective control of the corporation were obtained by Edudata. In the absence of violation of federal or state law, this would be of no legal concern. However, harm to SCI, the value of its shares, and jobs for its employees are of legal concern if the law were violated. All that this court can determine at this point is that closer examination is warranted.

Neither side has addressed the issue of a bond or its amount. SCI, however, filed a bond in the amount of $5000 with its motion for a restraining order. No objection to that bond has been made, and on this record the court finds it to be sufficient until further hearing.

■ Finally, the court finds that SCI's motion for expedited discovery should be granted. Further development of the record before the preliminary injunction hearing will better enable the court to judge the parties' interests and respective chances for success on the merits.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1. The motion of Edudata Corporation for a temporary restraining order is denied.

---

1. The act provides in pertinent part: It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request or invitation. 15 U.S.C. § 78n(e). *See also* the disclosure requirements in 15 U.S.C. §§ 78m(d) and 78n(d).

2. The motion of Scientific Computers, Inc. for a temporary restraining order is granted, and Edudata Corporation, Shamrock Associates, Sun Equities Corporation, Paul Koether, Natalie Koether, their agents and all persons in active participation with them, are hereby enjoined from proceeding with, causing or aiding and abetting the tender offer by Edudata Corporation to purchase shares of Scientific Computers, Inc., or engaging in any activities in furtherance of Edudata Corporation's tender offer, and from accepting tenders of shares of Scientific Computers, Inc. stock.

3. This restraining order shall be effective immediately and will remain in effect until midnight on October 18, 1984 or further order of this court.

4. A hearing will be held on the parties' request for preliminary injunctions on October 17, 1984 at 2:00 p.m.

5. The parties shall furnish to this court and opposing counsel by October 11, 1984 any additional memoranda, affidavits, or exhibits applicable to these motions.

6. The motion of Scientific Computers, Inc. for expedited discovery is granted allowing it to proceed with the depositions of the officers, directors and managing agents of the Edudata Corporation, Shamrock Associates and Sun Equities Corporation, beginning on October 1, 1984.