**SCIENTIFIC COMPUTERS, INC., a Minnesota corporation, Plaintiff,**

v.

**EDUDATA CORPORATION, a Delaware corporation, Shamrock Associates, a New Jersey Limited Partnership, Sun Equities Corporation, a Delaware corporation, and Paul Koether, and Natalie Koether, Residents of New Jersey, Defendants.**

Civil No. 4–84–978.

United States District Court,
D. Minnesota,
Fourth Division.

October 18, 1984.

On Motion for Preliminary
Injunction Oct. 24, 1984.

Roger Magnuson, Dorsey & Whitney, Minneapolis, Minn., for Scientific Computers, Inc.

Theodore Altman, Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Wein, New York City, and Robert Sheran, Lindquist & Vennum, Minneapolis, Minn., for Edudata Corporation and Paul Koether and Natalie Koether.

David L. Katsky, Esanu, Katsky, Korins & Siger, New York City, and Robert Woods, Esq., Briggs & Morgan, Minneapolis, Minn., for Shamrock Associates.

## ORDER

DIANA E. MURPHY, District Judge.

An order was issued in this case on September 28, 1984 restraining Edudata Corporation (Edudata) from proceeding with a tender offer until a preliminary injunction hearing could be held on October 17, 1984. The order, denominated a temporary restraining order, provided that the temporary relief would continue until midnight on October 18, 1984 or further order of this court. This date was set with the requirements of Fed.R.Civ.P. 65 relating to temporary restraining orders in mind.

The Eighth Circuit Court of Appeals subsequently affirmed this order, but ruled that it was in substance a temporary injunction rather than a restraining order. The Court of Appeals also stated: "An evidentiary hearing on the issue of further injunctive relief will take place on October 17, just a few days from now. We are confident that the injunction against Edudata's tender offer will neither be renewed nor denied at that time without full and careful findings." *Edudata Corporation v. Scientific Computers, Inc.*, 746 F.2d 429, at 430 (8th Cir.1984) (per curiam).

At 2:00 p.m. on October 17, 1984, a hearing on the preliminary injunction motions in this matter and in a companion case, *Edudata v. Scientific Computers, Inc.*, — F.2d ——, Civ. No. 4–84–968, was convened and continued for four and one-half hours. Voluminous documents were submitted by the parties and *amicus curiae* right up until the time of the hearing. These consisted of memoranda, exhibits, affidavits, reply memoranda, and proposed findings. Almost two feet of new documents were delivered to the court on the day of the hearing. Counsel for Edudata also stated at the hearing that it would like to respond to the proposed findings submitted by Scientific Computers, Inc. (SCI).

It is obviously impossible on this record to make full and careful findings before expiration of the court's previous order. The Court of Appeals was probably not focusing on the restraining order's expiration time when it foresaw that this court would make appropriate findings after providing a full hearing. Serious and difficult questions have been raised on the merits calling for deliberate investigation. *See Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (1981). It therefore seems appropriate to continue the previous order in some form until full and careful findings can be made. Although the court is engaged in a jury trial, it will make every effort to expedite its decision on the injunction issues presented. In the brief interim the order should be continued in some form.

The court asked the parties at the hearing to attempt to work out some agreement on the form of an interim order. The parties have been unable to agree, however. Edudata suggests that the court allow it to distribute its amended tender offer materials to shareholders in the meantime, while the purchase of shares continues to be enjoined until the court has reached its decision. It also requests that SCI be restrained from taking any steps to alter the status quo or to combat the tender offer during this period. At the hearing it alleged that SCI had benefited by the period of delay and had altered the status quo by a number of steps including the provision of a "golden parachute" to its president. SCI, on the other hand, wants the order extended without modification. It argues that if the court finds further disclosures to be necessary, any additional materials

may not be able to cure harm done by shareholders' initial exposure to fraudulent materials. It notes that Edudata has not alleged any violations of the law by it and is therefore not entitled to injunctive relief.[1]

The court is persuaded that an interim order is required on this record until a determination on the motion can be made and full and careful findings issued. The court has considered the parties' positions and believes that its previous order should be extended, but that some modification is warranted. Since the original order was issued, Edudata has made additional disclosures and the state proceedings contemplated under Minn.Stat.Ch. 80B have run their course. SCI raises serious questions as to whether additional disclosures are necessary under the Williams Act. Edudata should not be able to consummate its tender offer at this point, but the court recognizes that delay works to the advantage of the target company in such a situation. It appears that SCI is taking steps to protect its interests while Edudata is restrained. Under these circumstances, the most equitable solution for the interim is to permit Edudata to distribute its tender offer materials. It may only do so, however, under certain conditions.

Edudata must distribute its amended disclosures with its other materials, and a separate disclosure must be made in a prominent fashion. This disclosure must clearly state in a notice placed on top of the materials, in conspicuous type, that the tender offer materials are currently being examined by this court to determine whether they adequately disclose the circumstances of the offer and that further disclosures may follow. The shareholders must also be informed that Edudata is unable to make any purchases until further order of this court.

If the court later finds Edudata has complied with the disclosure requirements of

Sections 14(d) and 14(e) of the Williams Act, 15 U.S.C. §§ 78n(d) and (e), this modification will lessen any harm it suffers while the court makes that determination. If the court determines that defendants have not complied with federal law, it may require further disclosure or enjoin the purchase of SCI stock. If further disclosure is required, a separate mailing with appropriate notice would highlight any additional disclosures to the shareholders. This should allay SCI's concerns.

## ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The temporary injunctive relief ordered in favor of Scientific Computers, Inc. herein on September 28, 1984 is extended until midnight on October 31, 1984, or further order of this court, with the following amendments.

2. The order granting injunctive relief herein on September 28, 1984 is hereby amended to permit Edudata Corporation to distribute its tender offer materials to shareholders, provided that it clearly state in a notice included with the materials that defendants and all persons in participation with them are enjoined from purchasing any SCI shares until this court determines whether the materials adequately disclose the circumstances of the offer and whether the purchase may go forward. The shareholders should also be notified that further disclosures may be ordered.

## ON MOTION FOR PRELIMINARY INJUNCTION

Plaintiff in this case, Scientific Computers, Inc. (SCI), a Minnesota corporation, brings this action against Edudata Corporation (Edudata), Shamrock Associates (Shamrock), Sun Equities Corporation, (Sun

---

**1.** In a letter to the court, dated October 18, 1984, SCI states that it would agree not to consummate in the meantime any of the defensive activities referred to in *Edgar v. MITE,* 457 U.S.

624, 638 n. 13, 102 S.Ct. 2629, 2639 n. 13, 73 L.Ed.2d 269 (1982), provided that the previous restraints against Edudata were continued.

Equities), and Paul Koether and Natalie Koether, alleging violations of Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 as amended by the Williams Act, 15 U.S.C. §§ 78m(d), 78n(d) and (e). The complaint also alleges violations of sections of the Minnesota Take-Over Act, 1984 Minn.Laws Ch. 488, to be codified as Minn.Stat.Chs. 80B and 302A, and common law fraud. Jurisdiction is alleged under 15 U.S.C. § 78aa, 28 U.S.C. §§ 1331, 1332 and pendent jurisdiction.

The matter is presently before the court upon SCI's motion for a preliminary injunction to prevent defendants, and those in participation with them, from proceeding with the tender offer commenced by Edudata on September 20, 1984 to purchase shares of SCI and from accepting offers of shares of SCI's stock.

PROCEDURAL BACKGROUND

In the past month, Edudata's tender offer has spawned four separate actions, as well as state administrative proceedings. In a case filed the day of the tender offer, Civil No. 4–84–968, Edudata seeks a judgment that certain recently-enacted provisions of the Minnesota Take-Over Act, 1984 Minn.Laws Ch. 488, to be codified as Minn. Stat.Chs. 80B and 302A, are unconstitutional under the Commerce Clause and preempted by the Williams Act. The complaint also requested temporary and permanent injunctive relief restraining SCI and certain state defendants, Attorney General Hubert H. Humphrey III and Commissioner of Commerce Michael A. Hatch (the Commissioner), from interfering with Edudata's tender offer by seeking to enforce the state provisions and proceeding in any other forum.

The Commissioner suspended the effectiveness of Edudata's tender offer in Minnesota on September 24, 1984 pursuant to Minn.Laws 1984, Ch. 488, § 6, to be codified as Minn.Stat. § 80B.03 subd. 4a. He found that the tender offer materials did not provide full disclosure of all material information: Edudata failed to specify its future plans concerning the target company (SCI), to identify adequately Edudata's

background and affiliates, or to specify any potential liability Edudata may have due to misstatements or omissions of material fact made in its public offering of July 1984. Commissioner's Order at pp. 1, 2. He set a hearing date of October 4, 1984 or earlier, if Edudata so desired, to determine whether the suspension should be terminated or made permanent. Commissioner's Memorandum to Order at 8.

SCI responded to the tender offer by bringing an action in state court on September 25, 1984 and filing the instant case in this court on the following day. The state action was subsequently removed to this court by Edudata; SCI's motion to remand was denied on October 4, 1984. That action is Civil No. 4–84–980.

After a hearing on September 26, 1984 on the parties' motions for a temporary restraining order in this case and in the original one brought by Edudata, this court issued an order on September 28. That order denied Edudata's motion and granted SCI's motion to prevent defendants herein and persons in participation with them, from proceeding with Edudata's tender offer pending a hearing on the preliminary injunction motions on October 17, 1984. SCI's motion for expedited discovery was also granted. By its terms, the temporary restraining order was to expire at midnight on October 18, 1984.

Edudata appealed these orders. The Court of Appeals, by order of October 12, 1984, dismissed the appeal from the denial of Edudata's motion for a temporary restraining order and affirmed the order granting SCI what it found to be a temporary injunction.

On October 3, 1984, the day before the Commissioner's scheduled disclosure hearing, Edudata removed the administrative proceedings to this court under 28 U.S.C. § 1441. On October 4, 1984, after hearing, the Commissioner's motion for remand was granted, and the Commissioner proceeded with the disclosure hearing that afternoon. Edudata filed Amendment No. 2 to its registration statement at the conclusion of the

hearing.[1] On October 5, 1984, the Commissioner terminated his suspension of the tender offer, stating that there was no showing that full and fair disclosure of all material information concerning the offer had not been made or that the requirements of Minn.Stat. § 80B.03 subd. 6 were not met.

A four and one-half hour hearing on the preliminary injunction motions in this case and *Edudata v. Scientific Computers, Inc.*, 599 F.Supp. 1084 (D.Minn.1984), was held on October 17, 1984. Because of the volume of material submitted it was necessary to fashion an interim order to apply until a decision could be issued on the motions with full and careful findings.[2] *See* Order issued on October 18, 1984. Because of the significance of passing time, it is appropriate to determine SCI's motion for a preliminary injunction before considering the constitutional issues raised by Edudata in, 599 F.Supp. 1084.

## FACTUAL BACKGROUND

The relevant facts appear as follows. SCI provides on-line data processing services, data entry services, systems services, and graphic arts services to its customers. During its fiscal year ended June 30, 1984, SCI's sales totalled $14,597,371.00 giving it a net profit of $1,228,933. SCI's Annual Report on Form 10–K for fiscal year ended June 30, 1984. Virtually all of SCI's property and equipment, valued at about $6 million, are located in Minnesota. *Id.* About 1500 people own common stock in SCI, with at least twenty (20) percent of the company's outstanding shares owned by Minnesota residents.

Edudata, a Delaware corporation, is in the business of developing, selling, conducting and supervising computer training courses. Edudata was reorganized in 1983, as a majority-owned subsidiary of Sun Equities, also a Delaware corporation, and began business operations in January, 1984. In the nine month period ending April 30, 1984, Edudata had total sales of $17,922 and lost over $184,000 during that period. Edudata Prospectus at 5. On that date, Edudata had total assets of approximately $260,000 and a net worth of $43,-000. *Id.*

Shamrock is a New Jersey limited partnership of three general partners and 67 limited partners. It began investing in SCI shares in May 1983 and is currently the largest single shareholder of SCI, having approximately 30% of the common stock. Pursuant to Section 13(d) of the Securities Exchange Act, 15 U.S.C. § 78m(d)(1), Shamrock filed a Schedule 13(D) stating that the purchases of SCI stock were made for purposes of investment.[3]

Natalie Koether is a general partner of Shamrock, chairperson of Edudata, and president and director of Sun Equities. She owns shares in all three corporations and has acted as legal counsel to both Edudata and Shamrock.

Paul Koether, the husband of Natalie Koether, is a director of Edudata, chairper-

---

1. Among other things, Amendment No. 2 provided more information about a) the relationships and affiliations between Edudata, Shamrock, Sun Equities, Westwind Industries, N.V. and their executive officers and directors; b) the material transactions taking place among the above; c) the potential liability of Edudata or its principals as a result of its use of proceeds of the July public offering for a leveraged buyout transaction involving a hostile tender offer for SCI; d) discussions between Shamrock and SCI, as well as discussions between Shamrock and Edudata with regard to the SCI option; and e) the relationship that would exist between Edudata and SCI should the tender offer and merger take place.

2. The court modified the previous order to allow Edudata to distribute its tender offer materials to the shareholders. The court required Edudata, however, to affix a sticker to the front of the materials, and to the letter of transmittal, stating that it, and all those in participation with it, could not purchase any SCI shares until the court determines whether the materials adequately disclose the circumstances of the offer. *See also* Order issued on October 19, 1984.

3. These filings also stated that Shamrock "reserves the right to take all such actions as it may deem appropriate to protect is investment ...." Subject to the business prospects of SCI, market and economic conditions, Shamrock stated that it may increase or decrease or entirely dispose of its holdings.

son of Sun Equities, and a limited partner in Shamrock. He also owns approximately 20% of the shares of Sun Equities.

In July 1984, Edudata made a public stock offering and raised more than $2 million. Its prospectus stated that these proceeds were to be used to open education centers, to develop, license, and maintain software inventory and to develop business advisory services. Edudata prospectus at 13.

In addition, the prospectus stated that Edudata "would consider utilizing a substantial portion or all of the proceeds of this offering for an appropriate acquisition which was consistent with its business plan." *Id.* Edudata stated in the prospectus that it has had preliminary discussions about acquiring other businesses, but it had, at that time, no understandings or agreements for future acquisitions. *Id.* The prospectus did not indicate that SCI was the potential subject of such acquisition.

On September 20, 1984, Edudata offered to buy all outstanding shares of the common stock of SCI for $11.00 per share, a premium over the then-prevailing market rates.[4] Edudata financed this offer by the July public offering and by securing a $10 million loan from Howard Savings Bank, located in Newark, New Jersey. Before embarking on its offer, Edudata acquired an option to purchase Shamrock's 30% interest in SCI. Natalie Koether participated in the option negotiations on behalf of Edudata, even though she serves as general and limited partner of Shamrock.

In response to the offer, SCI took a full-page advertisement in *The Wall Street Journal* urging shareholders not to accept the offer because the price is unfair and inadequate.

Pursuant to Section 14(d)(1) of the Securities Exchange Act, 15 U.S.C. § 78n(d)(1), Edudata filed a tender offer disclosure statement, Schedule 14D–1, with the Securities Exchange Commission (SEC) on Sep-

tember 21, 1984. It has supplemented its 14D–1 schedule by filing five amendments with the SEC, the last one filed on October 12, 1984. Altman aff. at 2. The fifth amendment contained material required to be disclosed in the state hearing before the Commissioner would lift his suspension. Nonetheless, SCI maintains that Edudata's disclosure statement contains material omissions and misrepresentations in violation of Section 14(d) and 14(e) of the Williams Act, 15 U.S.C. §§ 78n(d) and (e).

## DISCUSSION

■ Whether preliminary injunctive relief should be granted depends upon the showing made on the following factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981).

SCI asserts that it and its shareholders have already been harmed by the Koether group's concealed acquisition of 30% of SCI stock and that this harm will become irreparable unless the tender offer is enjoined. It claims that Edudata's continuing material nondisclosure threatens irreparable harm to SCI and its shareholders by denying the stockholders the information they need to make a fully informed decision about tendering their stock. *Life Investors, Inc. v. AGO Holdings,* (CCH) ¶ 98,356 (8th Cir.1981).

Edudata, on the other hand, contends that SCI's concern for itself and the shareholders fails to constitute irreparable injury. Edudata notes that the Williams Act exists for the protection of shareholders, not that of corporate management, citing *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975). It asserts that Congress disavowed

---

**4.** Edudata states that SCI stock was selling for just $8.34 per share before the tender offer was

announced.

any intention to provide management a weapon to thwart takeover bids. Nor should employee morale or an increase in management anxiety be a basis for injunctive relief. *See Missouri Portland Cement Co. v. Cargill Incorporated*, 498 F.2d 851, 869 (2d Cir.1974). Similarly, even if SCI shareholders decided to tender under the influence of alleged misstatements and omissions, Edudata contends that the proper remedy is an action at law for damages. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *Missouri Portland Cement Co. v. H.K. Porter Co.*, 535 F.2d 388, 399 (8th Cir. 1976).

The parties naturally disagree as to the balance of harm. SCI argues that Edudata cannot show any irreparable harm resulting from delay of its present tender offer because it could bring a second takeover bid after trial. Edudata contends that delay of a tender offer itself constitutes substantial and perhaps irreparable harm. Such delay increases the possibility that the offer will not be completed successfully, not through shareholder action as contemplated by Congress, but through defensive tactics of management. It argues that loss of the opportunity to acquire the target company's stock cannot be compensated by money damages and that the expenses of preparing the offer are unrecoverable if the offer is enjoined. Edudata charges that while its tender offer has been stalled, SCI had taken many of the defensive steps recognized in *Edgar v. MITE*, 457 U.S. 624, 638 n. 13, 102 S.Ct. 2629, 2639 n. 13, 73 L.Ed.2d 269 (1982), including offering a "golden parachute" to its president.[5] Edudata also asserts that SCI shareholders who desire to tender their shares for a premium will suffer substantial harm, "even assuming lack of full disclosure." *Vernon J. Rockler & Co. v.*

*Minneapolis Shareholders Company*, 425 F.Supp. 145, 151 (D.Minn.1977).

The court recognized when issuing its original order that delay is a potent weapon in a tender offer fight, but it also noted that the Williams Act contemplates delay if necessary to remedy material violations of the federal securities law. *Pacific Realty Trust v. APC Investments*, 685 F.2d 1083 (9th Cir.1982). Because SCI had raised serious questions as to the adequacy of Edudata's disclosure of key information concerning Edudata's background, affiliates and future plans, the court issued a temporary order halting its tender offer.

■ Since that time, however, the status quo has altered. Edudata has made additional disclosures and the state proceedings authorized under Minn.Stat.Ch. 80B have run their course.[6] SCI has engaged in various defensive tactics which may enable it to thwart Edudata's tender offer no matter what the shareholders desire. The current injunction should not be extended then, unless material omissions or misrepresentations remain in the tender offer materials after Edudata's recent amendments.

SCI contends that expedited discovery has revealed continuing fraudulent misrepresentations and omissions in violations of Sections 13(d), 14(d) and 14(e) of the Securities Exchange Act, 15 U.S.C. §§ 78m(d), 78n(d) and (e), that assures its success on the merits.

It claims four areas of nondisclosure in violation of Section 14(e), the anti-fraud provision of the Williams Act. Section 14(e) makes it unlawful:

to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made in light of the circumstances under which they are made, not

---

5. The terms would allow the president to resign from SCI if the tender offer succeeds, take approximately $500,000 with him, and compete with SCI with use of its trade secrets.

6. Chapter 80B authorizes the Commissioner of Commerce to suspend the effectiveness of the tender-offer in Minnesota if the Registration

Statement does not contain all material information concerning the offer. The disclosure provisions of 80B largely parallel those required by SEC Schedule 14D–1 and include a general anti-fraud prohibition similar to Section 14(e) of the Williams Act, 15 U.S.C. § 78n(e).

misleading, ... in connection with any tender offer .... 15 U.S.C. § 78n(e). The standard for determining materiality that SCI must meet is as follows:

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding [whether to tender his stock].

\* \* \* \* \* \*

[T]he standard ... contemplate[s] ... a showing of substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Prudent Real Estate Trust v. Johncamp Realty, Inc.,* 599 F.2d 1140, 1147 (2d Cir. 1979) quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

First, SCI alleges that Edudata has not revealed that the tender offer is being made by the "Koether group", and that it has failed to disclose relationships between, and material information about, members of the group. SCI contends that Shamrock's history of "greenmail" and fights for corporate control and Edudata's thin capitalization and inexperienced management should be disclosed.

Edudata responds that its Schedule 14D–1 and amendment No. 5 set forth in detail all necessary information concerning Edudata, the Koethers, Shamrock, Sun Equities and their relationships. Shamrock's history of selling large blocks of shares is set out in amendment 5 at p. 25, as is its litigation with the Dorsey Corporation (p. 30), as well as statements concerning Edudata's capitalization and experiences (amendment 5, p. 34).

Second, SCI contends that Edudata violated Section 14(e) by failing to disclose that it might be sued with respect to its July public offering. SCI alleges that the prospectus was fraudulent since it did not reveal that Edudata would immediately begin a hostile takeover of SCI even though the Koether group had formed the intent to acquire SCI before the final closing of the public offering on August 22, 1984.[7] SCI also charges that Edudata has failed to disclose other contingent liabilities arising from the conflict of interest Natalie Koether created when she negotiated the option agreement between Shamrock and Edudata despite her dual roles in the corporations.

Edudata contends that its public offering prospectus expressly states that some or all of the proceeds might be used for acquisitions, that consideration of a possible merger was rejected before the public offering and only resurfaced after the completion of the public offering, and that the following disclosure provides adequate warning to shareholders:

In light of Response 6 and 7 of this amendment, or otherwise, claims might be asserted against Edudata and/or its principals under the federal securities laws or otherwise, that the prospectus improperly failed to disclose that Edudata would seek to acquire SCI by means of a hostile tender offer and leveraged buyout type transaction. Such claims might seek rescision [sic] and return of all of the more than $2 million raised in the offering and/or damages. If such claims are asserted, Edudata believes they would be without merit. A copy of the Use of Proceeds section of the Edudata prospectus dated July 27, 1984 will be attached as Exhibit A. Edudata Schedule 14D–1, amendment 5, p. 17.

Edudata notes that this disclosure and response 6 of amendment 5 adequately disclose Natalie Koether's conflict of interest

---

7. SCI argues that the Koether group's intent to link SCI and Edudata first surfaced at a March 30, 1984 meeting where SCI's president met with David Blanchard and the Koethers representing Shamrock, and Albert Angrisani representing Edudata. It notes that an acquisition proposal was prepared before the first closing of the public offering and that Natalie Koether first sought financing on August 9, 1984, before the second closing was held on August 27, 1984.

during the option negotiation and any possible resulting liabilities.

Third, SCI charges that Edudata violated Section 14(e) by failing to disclose adequately its post-acquisition plans for SCI, such as substitution of new management and its plans to sell SCI's graphic arts business.

Edudata, on the other hand, states that its tender offer filings disclose its plans for SCI, its management and its assets. Schedule 14D–1, p. 27; amendment 5, p. 34, 35. Edudata asserts that the plan to sell the graphic arts business was discarded before the tender offer commenced and need not be disclosed. *Missouri Portland v. H.K. Porter & Company, Inc.*, 406 F.Supp. 984, 987 (E.D.Mo.1973), *aff'd*, 535 F.2d 388 (8th Cir.1976).

Finally, SCI contends that Edudata has not adequately disclosed the financing of the offer since it did not reveal that Shamrock and James Cotter, allegedly a member of the "Koether group", each own a significant interest in Howard Savings Bank, the only bank to offer funds for the tender offer.

Edudata, by contrast, argues that section 13 of its Schedule 14D fully discloses the terms of the loan and that the chairman and the loan officer of the bank have both testified that neither Cotter nor Shamrock attempted to influence Howard's decision to finance the tender offer. McCormick dep. at 62–63; Tepee dep. at 41–49.

After thoroughly considering the parties' arguments, Edudata's public filings and amendments, and the discovery materials submitted, the court finds that SCI has not shown a probability of success on the merits of its Section 14(e) claims. It is well established that defective tender offer materials can be cured by an amending offer. *Missouri Portland Cement Co. v. H.K. Porter Co.*, 535 F.2d 388, 396 (8th Cir.1976). Edudata's current filings, as amended, are sufficient to meet the disclosure requirements of the Williams Act. The Act, as evidenced by the requirements of Schedule 14D, does not impose an unreachable standard of disclosure on an offeror; rather, it seeks to protect the shareholders, without undue aid to management, by requiring disclosure of all information that would be significant to the reasonable shareholder.[8] In this case, where Edudata has offered to purchase 100% of the shares and will leave no locked in minority, the reasonable shareholder may not even desire to know all the information Edudata has provided. *See Prudent Real Estate Trust v. Johncamp Realty, Inc.*, 599 F.2d 1140, 1147 (2d Cir.1979).

SCI also alleges that Edudata violated Section 14(d)(2),[9] by failing to disclose that it is acting with Shamrock, Sun Equities, and the Koethers to gain control of SCI. It further contends that Edudata has failed to provide adequate financial information about the bidder as required by Item 9 of Schedule 14D–1[10] since it is a shell corporation and has not revealed the finances of its controlling entities, Sun Equities, Shamrock, or the Koethers. It says such information is important to shareholders decid-

---

**8.** As the court in *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 948 (2d Cir.1969), stated:

Congress intended to assure basic honesty and fair dealing, not to impose an unrealistic requirement of laboratory conditions that might make the new statute a potent tool for incumbent management to protect its own interests against the desires and welfare of the stockholders.

**9.** Section 14(d)(2) requires a tender offer bidder to disclose whether it is acting "as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer." Instruction C to Schedule 14D–1 requires a bidder to answer items (2) through (7) with reference to each bidder. 15 U.S.C. § 78n(d)(2); 17 C.F.R. 240.-14d–100.

**10.** Item 9 provides: Where the bidder is other than a natural person and the bidder's financial condition is material to a decision by a security holder of the subject company whether to sell, tender or hold securities being sought in a tender offer, furnish current, adequate financial information concerning the bidder; *provided,* that if the bidder is controlled by another entity which is not a natural person and has been formed for the purpose of making the tender offer, furnish current, adequate financial information concerning such parent. 17 C.F.R. 240.-14d–1.00.

ing whether to accept Edudata shares or all cash in payment for any SCI shares tendered.

Edudata relies on *Liberty National Insurance Holding Co. v. Charter Co.*, 734 F.2d 545 (11th Cir.1984), to assert that SCI has no standing to bring a private right of action under Section 14(d). Even assuming standing, it argues that both Edudata and Sun Equities are public companies with extensive financial information on file with the SEC and that this information displays the material relationships among the companies and the Koethers.

■ The question of SCI's standing under Section 14(d) was not extensively argued by the parties, and the court is aware of no Eighth Circuit case addressing this issue. For reasons discussed in *Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 714–715 (5th Cir.1984), however, the court finds that SCI does have standing. Nevertheless, it is unconvinced that SCI has shown a probability of success on the merits of its Section 14(d) claims.

As discussed above, Edudata is a public company with information on file disclosing the relationships of the Koethers and Sun Equities with Edudata. Since the record does not establish that Edudata was formed for the purpose of making a tender offer, it would not be required under Item 9 to provide financial information about Sun Equities. While Edudata is a develop-

ing company, it is not a non-operating shell. Evidence shows that it is engaging in a business distinct from its parent company. Donovan dep., *passim.* Disclosure of its parent's financial information is therefore not called for. Moreover, Sun Equities regularly files disclosures with the SEC which are a matter of public record.[11] Thus, SCI shareholders do not seem to be deprived of material information under 14(d).

SCI contends that a continued injunction against Edudata is mandated by its failure to disclose that it was acting as part of group in violation of Section 13(d)(3)[12] and for Shamrock's "creeping acquisition" of SCI stock without disclosure of intent to control as required by Section 13(d)(1)(C) of the Williams Act.[13] SCI contends that the group's concealed attack caused irreparable harm to SCI as it hindered its ability to combat the advances of the Koether group. In addition, if shareholders who sold at that time knew that Shamrock was seeking control, they may have held on to their shares expecting a higher price or other benefit of a new entity. SCI asserts that corrective amendments cannot cure this irreparable harm; a further injunction is necessary to prevent defendants from profiting from its wrongful conduct. *Hanna Mining Company v. Norcern Energy Resources Ltd.*, 574 F.Supp. 1172 (N.D.Ohio 1982); *General Steel Industries, Inc. v. Walco National Corp.*, 527 F.Supp. 305 (E.D.Mo.1981).

---

**11.** The cases cited by SCI as authority for further financial disclosure are distinguishable as they involve private corporations or persons who were not required to make routine financial disclosures with the SEC, as are Edudata and Sun Equities. Also, the parties were tendering for less than 100% of a company's shares. *See Pabst Brewing Co. v. Kalmanovitz*, 551 F.Supp. 882 (D.Del.1982); *Prudent Real Estate Trust v. Johncamp Realty, Inc.*, 599 F.2d 1140 (2d Cir.1979). Moreover, *Life Investors, Inc. v. AGO Holdings, N.V.*, Fed.Sec.L.Rep. (CCH) ¶ 98,-356 (8th Cir.1981) cannot be cited as precedent as it has not been officially published.

**12.** Section 13(d)(3) requires disclosure by two or more persons act[ing] as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer .... 15 U.S.C.

§ 78m(d)(3). SCI charges that any pooling of interests, whether formal or informal, constitutes a group under this provision. *SEC v. Savoy Industries, Inc.*, 587 F.2d 1149 (D.C.Cir. 1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979).

**13.** Section 13(d)(1)(C) of the 1934 Act requires any person who, after a purchase of securities registered under Section 12 of the Act, owns more than 5% of that class of securities, to disclose whether:

[T]he purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make other major change in its business or corporate structure. 15 U.S.C. § 78m(d)(1)(C).

Edudata asserts that the relevant issue is whether the material relationships among the entities has been disclosed. It argues that Shamrock is a separate entity which acquired its stock for investment purposes and that damage actions could be available to shareholders who sold to Shamrock.

The court finds that SCI's chances for success on the merits of its Section 13(d) claims are not great and do not justify injunctive relief. Even if SCI can prove that Edudata, Shamrock, Sun Equities and the Koethers did act as an undisclosed group, other courts have found this immaterial, so long as the basic relationships are disclosed. *See Marshall Field & Co. v. Icahn,* 537 F.Supp. 413, 419-420 (S.D.N.Y. 1982); *Treadway Companies, Inc. v. Care Corp.,* 490 F.Supp. 660, 665 (S.D.N.Y.), *aff'd in part,* 638 F.2d 357, 380 (2d Cir. 1980). Edudata has set these relationships out in detail in Schedule 14D, amendment No. 5. Moreover, Shamrock stated in amendment 14 to its Schedule 13D filed September 25, 1984, that "by reason of the rights and obligations of Shamrock and Edudata under the Option Agreement, Shamrock and Edudata may be deemed to constitute a group within the meaning of Section 13(d)(3) ...." If as SCI claims, this statement has come too late for SCI shareholders who sold to Shamrock, those shareholders could have an action for damages. *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707 (6th Cir. 1984); *Missouri Portland Cement Co. v. H.K. Porter Co.,* 535 F.2d 388 (8th Cir. 1976).

In addition, SCI has not demonstrated that it will succeed in proving that Shamrock has filed false Schedule 13D statements. Shamrock alleges that it is only a

bystander in this tender fight, seeking to liquidate its investment. Yet even assuming SCI can prove its creeping acquisition charge, a continuing injunction is not the proper way to deal with misleading 13(d) filings. *Gearhart Industries Inc. v. Smith International, Inc.,* 741 F.2d 707 (6th Cir.1984); *Missouri Portland Cement Co. v. H.K. Porter Co.,* 535 F.2d 388 (8th Cir.1976); *Chromalloy American Corp. v. Sun Chemical Corp.,* 611 F.2d 240 (8th Cir.1975). The cases cited by SCI cannot be reconciled with these precedents.[14] In fact, *General Steel Industries, Inc. v. Walco National Corp.,* 527 F.Supp. 305 (E.D. Mo.1981) was later vacated by the Eighth Circuit. *General Steel Industries, Inc. v. Walco National Corp.,* 676 F.2d 704 (8th Cir.1981) *(mem.).*

In addition to the Williams Act claims, SCI seeks an injunction pursuant to the Minnesota Take-Over Act, 1984 Minn. Laws Ch., 488, to be codified as Minn.Stat. Chs. 80B and 302A.[15] SCI can show no entitlement to injunctive relief under the anti-fraud provision of 80B, however. Since the enforcement proceedings envisioned by the legislature have already taken place, that claim appears to be moot. Furthermore, as SCI argues, the anti-fraud provision of 80B mirrors the anti-fraud provision of Section 14(e) of the 1934 Act, 15 U.S.C. § 78n(e); as the court found above, success on the merits is unlikely. The constitutionality of Minn.Stat. 302A is at issue in a companion case, *Edudata v. Scientific Computers, Inc.,* 599 F.Supp. 1084, in which the court will also address the right to injunctive relief. Suffice it to say that at this time SCI has not established that it has standing to seek injunctive relief under Minn.Stat. § 302A or that it is likely to succeed on the merits of its claim.

**14.** In *Gearhart* for example, the trial court found conclusively that the acquiring party failed to reflect intent to control, stating instead that it wished only to invest. The Sixth Circuit held that an injunction to rectify any disadvantage to the target company's management caused by the surprise attack could not be supported by the Williams Act. *Gearhart* at 715. Similarly, an injunction is unnecessary to those shareholders who have sold shares under a mis-

apprehension created by false 13(d) statements; damages will suffice. *Id.* at 716.

**15.** Section 302A.671 subd. 4 provides that an offeror may not consummate its tender offer until approved by shareholders of the target company. A special shareholders meeting has been called for November 15, 1984, but SCI fears that Edudata will consummate the tender offer before the shareholder vote.

Finally, SCI alleges that the Koether group's misrepresentations about its identity, finances and accumulation of SCI stock constitute fraud in violation of Minnesota common law. For reasons similar to those discussed above, SCI has not demonstrated probable success on the merits or that an injunction must issue to prevent irreparable harm.

Since SCI is unlikely to prove on the merits that material omissions or misrepresentations remain in Edudata's tender offer materials, the court finds that SCI will suffer no irreparable harm if the tender offer proceeds. The shareholders now have information about the Koether group and notice that Shamrock may have been angling for control. Further injunctive relief is unnecessary. Damage actions are a potential remedy for any shareholders who may have sold SCI shares as a result of misleading filings.

Similarly, the balance of harm does not favor continuance of an injunction. Further delay is inappropriate when SCI cannot show that its shareholders lack material information, especially when it is actively taking steps to combat the tender offer, to Edudata's detriment. SCI has admitted that it has offered its president a golden parachute and that, at its request, Piper, Jaffray & Hopwood, Inc. has been seeking other potential business partners for SCI. Such steps may not only be against the interests of Edudata, but perhaps also against those of shareholders.

The court also finds that the public interest in affording stockholders the information they need to make a fully informed decision about the tender offer is protected without the continuation of the court's injunction. Edudata's filings, as amended, provide sufficient information to shareholders. The additional disclosures required by the Commissioner have been made to the shareholders and the SEC. The public has benefited by this process. Public interest is also served, moreover, by allowing the investing public and shareholders to consider the merits of Edudata's offer. In drafting the Williams Act, Congress took an even-handed approach toward management and offeror to avoid denying shareholders the opportunity to sell shares for a premium over the market price. *Edgar v. MITE*, 457 U.S. 624, 633 n. 9, 102 S.Ct. 2629, 2636 n. 9, 73 L.Ed.2d 269 (1982).

On sum, the court finds that SCI's motion for a preliminary injunction should be denied.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The injunctive relief previously granted herein on September 28, 1984 and then extended by order of October 18, 1984 is hereby dissolved.

2. The motion of Scientific Computers, Inc. for a preliminary injunction is denied.