726 F.Supp. 757 (1989)
A.P. GREEN INDUSTRIES, INC., Plaintiff,
v.
EAST ROCK PARTNERS, INC., Robert W. MacDonald, John D. Kuhns, and East Rock Partners L.P., Defendants.
No. N 89-0140-C.
United States District Court, E.D. Missouri, Northern Division.
December 12, 1989.
*758 W. Stanley Walch, Kenton E. Knickmeyer, Lawrence C. Friedman, St. Louis, Mo., for plaintiff.
Tom Fleming, New York City, Jim J. Shoemake, St. Louis, Mo., for defendants.

MEMORANDUM
GUNN, District Judge.
This case is currently before the Court on plaintiff's motion for preliminary injunction. For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

I. Statement of Facts

Plaintiff A.P. Green Industries, Inc. ("APGI") is a corporation organized under the laws of the State of Delaware, having its principal place of business in Mexico, Missouri. The common stock of APGI is registered with the Securities and Exchange Commission (the "SEC") pursuant to Section 12(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 781(g) and is publicly traded on the National Market System of the National Association of Securities Dealers Automated Quotation System ("NMS/NASDAQ"). APGI has approximately 2,664,098 shares of common stock that are issued and outstanding. Approximately 8,455 shareholders of record hold APGI's common stock. APGI produces, sells and installs heat-resistant materials called "refractory products" for use in high temperature manufacturing. It is also in the lime business, processing limestone in the Southeast and Southwest.
Defendant East Rock Partners L.P. ("East Rock") has one general partner, defendant East Rock Partners, Inc., and one limited partner, Westwood Brick Lime, Inc. ("Westwood Brick"). Defendants Robert W. MacDonald and John D. Kuhns control East Rock through their ownership of its general partner. Westwood Brick is an indirect wholly-owned subsidiary of The Westwood Group, Inc., a public company located in Boston, Massachusetts which, among other things, owns a restaurant chain and engages in real estate development.
East Rock is an investment and holding company based in New York City. The company manages a private pool of securities and risk arbitrage funds and also controls and operates a portfolio of companies with interests in investments and banking, energy and data processing. East Rock's private funds, including the capital of its principals as well as outside investors, are invested in publicly-traded equities and related instruments. East Rock Investments, Inc., a wholly-owned subsidiary, conducts East Rock's investment activities.
East Rock invests in securities for the sole purpose of ultimately purchasing all or *759 a majority of the shares of the underlying company. East Rock evaluates and approaches investments in a wide range of industries, placing special emphasis on opportunities in electric and heat energy, water, utilities, situations which rely on mortgage or asset-backed financing, industries involving installment financing of consumer purchases, and situations in which East Rock management can use their special experience in startups, workouts and financing.
East Rock began a program of acquiring APGI common stock on or about July 21, 1989. As of October 19, 1989, East Rock had acquired 233,000 shares of APGI common stock constituting 8.7% of the outstanding shares. East Rock filed a Schedule 13D form, in compliance with requirements of the Williams Act, 15 U.S.C. § 78m(d), on October 9, 1989 disclosing its acquisitions and providing certain information about East Rock and its partners. In that filing, East Rock identified itself as "a Delaware limited partnership formed for the purpose of investing in the common stock of [APGI]," and appended a copy of its partnership agreement. With regard to the purpose of the transaction, East Rock indicated that it "might determine to purchase additional shares ... or possibly propose an acquisition or other significant transaction."
East Rock subsequently filed several amended Schedule 13D forms. On October 17, 1989, East Rock filed an amendment which made a more detailed disclosure regarding the identities of the executive officers and directors of East Rock and West Brick Lime; indicated that it had purchased more APGI stock; and indicated that it had had further discussions with APGI management regarding the possibility of a takeover. On October 19, 1989, East Rock formally made a cash merger proposal to the APGI board of directors and simultaneously filed a second amended schedule 13D to disclose that fact, appending a copy of its merger proposal as an exhibit. Two further amendments were also filed which indicated the commencement of this litigation and the fact that APGI had advised East Rock that its Board still had not made any determination regarding the October 19th proposal; and, finally, the fact that East Rock had made a revised offer on November 9, 1989 whereby it indicated that it is prepared to acquire the company at $41 per share if APGI rescinds its recently formed employee stock ownership plan ("ESOP"), or otherwise for $37.25 per share. Kuhns and MacDonald offered to put up $1 million in collateral, which APGI could take as liquidated damages if East Rock was not able to deliver financing commitments in a timely manner.
APGI alleges that East Rock's 13D filings fail to disclose the following material information: (1) neither East Rock nor any of its controlling persons or affiliates has owned or operated a business engaged in manufacturing or producing products similar to APGI's products; (2) East Rock invests in risk arbitrage situations and has on occasion made short-term investments in other public companies; (3) in the financing book East Rock provided to its limited partner prior to investing in APGI, East Rock included an analysis of the return it would realize if it purchase APGI stock at $33 per share and sold within four months at $40 or $50 per share; (4) East Rock's Partnership Agreement provides that it will dissolve on February 3, 1990 unless its partners take action to extend the partnership; (5) East Rock has financial evaluations indicating that the intrinsic value of APGI stock is substantially higher than its current market price; (6) one of the plans for financing which East Rock considered utilized a lien on substantially all of APGI's fixed and operating assets, and the use of approximately $10 million in cash or cash equivalents and $9 million of excess pension accruals reflected on a recent APGI balance sheet; and (7) East Rock has been approached by a Scottish investor regarding the potential sale of APGI's lime business shortly after East Rock gains control of APGI as a possible method of funding East Rock's purchase of APGI stock.
Plaintiffs seek a preliminary injunction ordering East Rock to amend their Schedule 13D filing to include the above seven items of information within ten days of the *760 Court's order and enjoining East Rock from purchasing APGI stock until two business days after the amended 13D is filed with the SEC. In opposition to plaintiff's allegations, East Rock contends that it has disclosed some of the information plaintiff seeks to have included in the 13D form and that other of the information is so speculative that to disclose it as East Rock's belief or intention would expose East Rock to potential shareholder liability.
The Court finds the information listed in items 6 and 7 is material and should have been disclosed and accordingly grants plaintiff's motion with regard to those items. With respect to the remaining items, the Court finds either that East Rock has already disclosed the information (items 1, 2 and 4) or that the information is not material. The Court therefore denies plaintiff's motion with regard to items 1, 2, 3, 4 and 5.

II. Conclusions of Law

When making a determination as to preliminary injunctive relief, the Court must consider the following four factors:
1) the threat of irreparable harm to the movant;
2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant;
3) the probability that movant will succeed on the merits; and
4) the public interest.
Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981). Courts must determine the propriety of equitable relief under the Williams Act according to these traditional equitable standards. Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 60, 95 S.Ct. 2069, 2076, 45 L.Ed.2d 12 (1974); Chromalloy American Corp. v. Sun Chemical Corp., 611 F.2d 240, 248-49 (8th Cir.1979). The Court will address first the balancing of harms and next the probability of success on the merits.

A. Balancing of Harm
The Court finds that a preliminary injunction requiring East Rock to amend its Schedule 13D filing within ten-days and to cease purchasing APGI stock until such an amended document is filed would appropriately balance the hardships on the litigants and would also serve the public interest. Stock transactions, particularly when made in anticipation of or to effectuate a takeover bid of some kind, are inherently difficult to unscramble and therefore constitute irreparable harm to the shareholders of the target company if based upon false or misleading disclosures. USG Corp. v. Wagner & Brown, 689 F.Supp. 1483, 1487 (N.D.Ill.1988); Scientific Computers, Inc. v. Edudata Corp., 599 F.Supp. 1092, 1101 (D.Minn.1984). Moreover, existing shareholders may not have an adequate remedy at law for any injury resulting from East Rock's allegedly tainted acquisition of stock thus far. USG Corp., 689 F.Supp. at 1487. Finally, the public interest is served by requiring East Rock to comply with securities regulations. Id. The Court realizes that East Rock could be harmed by a substantial delay in its purchase of APGI stock. The brief delay contemplated by APGI's motion will cause far less harm to East Rock than would befall APGI shareholders if East Rock continues to purchase APGI stock without full disclosure of material information. Therefore, the Court finds that injunctive relief requiring East Rock to comply with the Williams Act and briefly halting its purchase of APGI stock achieves a proper balance of hardships between the parties litigant and the public interest.

B. Likelihood of Success on the Merits
Congress passed the Williams Act to ensure that shareholders who are confronted with a cash tender offer will not be required to respond without adequate information. Edgar v. MITE Corp., 457 U.S. 624, 633, 102 S.Ct. 2629, 2636, 73 L.Ed.2d 269 (1982); Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 58-59, 95 S.Ct. 2069, 2075-2076, 45 L.Ed.2d 12 (1974). "In pursuing this purpose, however, Congress wished to avoid favoring either the takeover *761 bidder or management." USG Corp., 689 F.Supp. at 1488, citing Edgar, 457 U.S. at 633, 102 S.Ct. at 2636.
Accordingly, the Act requires only that the takeover bidder disclose material information in each of five different areas: (1) the background and identity of the acquiring persons; (2) the source and amount of the funds used in making the purchases; (3) if the purpose of the purchases is to acquire control of the issuer, any plans to make any major change in its business or corporate structure; (4) the number of shares of the security which the acquiring person beneficially owns; and (5) whether the acquiring person has any contracts, agreements, or obligations regarding the issuer's stock. 15 U.S.C. §§ 78m(d)(1)(A)(D). In addition, Section 13D requires the reporting person to amend its report if any material change occurs in the facts set forth in the statements. 15 U.S.C. § 78m(d)(2).
The test for materiality of a misrepresentation is "whether a reasonable investor might have considered the information to be important in deciding whether to accept a tender offer." Missouri Portland Cement Co. v. H.K. Porter Co., 535 F.2d 388, 393 (8th Cir.1976). In the context of proxy regulation, the Supreme Court has elaborated on this standard:
[The standard] does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.
TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). The courts of appeals have adopted this analysis of materiality to apply wherever the term appears in the federal securities laws. Flamm v. Eberstadt, 814 F.2d 1169, 1174 (7th Cir.1987) (listing cases).
On the other hand, the courts have recognized that "some information is of such dubious significance that insistence on its disclosure may accomplish more harm than good." Flamm, 814 F.2d at 1175. Ongoing negotiations involve this type of information, both because such negotiations are "inherently fluid" with the eventual outcome "shrouded in uncertainty." Id.; and also because "premature disclosure may frustrate the achievement of the firm's objective, destroying the source of the value sought to be disclosed." Id.
The Court finds that the information in items 3 and 5 which APGI seeks to have included in East Rock's 13D disclosures falls under the latter category insofar as it is either too tenuous and undecided in nature or because it is premature. The Court further finds that the information in items 1, 2, and 4 has already been disclosed.
With regard to item 6, the Court finds that even the potential of financing a merger by means of encumbrance upon or use of a substantial portion of APGI assets is a material fact which shareholders might find significant in deciding whether to sell their stock. Similarly, the potential sale of part of APGI's business could enter into a shareholder's deliberations significantly.
Accordingly, in its order filed herewith, the Court grants plaintiff's motion for preliminary injunction with regard to items 6 and 7 and denies that motion in all other respects.

ORDER
Pursuant to the findings of fact and conclusions of law set forth in the Court's memorandum filed herewith,
IT IS HEREBY ORDERED that defendants East Rock Partners, Inc., East Rock Partners L.P., John D. Kuhns and Robert MacDonald (collectively "East Rock") are preliminarily enjoined from any and all purchases of the stock of plaintiff A.P. Green Industries, Inc. until the expiration of two *762 business days (i.e., days on which the New York Stock Exchange is open for business) following defendants' filing with the Securities and Exchange Commission of an amended Schedule 13D which adequately discloses the following information:
(1) One of East Rock's potential plans to finance the acquisition of A.P. Green's stock contemplates a lien on substantially all of A.P. Green's fixed and operating assets, and the use of approximately $10 million in cash or cash equivalents and $9 million of excess pension accruals reflected on a recent balance sheet of A.P. Green.
(2) East Rock has been approached by a potential investor regarding the possible sale of A.P. Green's lime business shortly after East Rock acquires control of A.P. Green to fund part of the cost of acquiring A.P. Green's shares.
IT IS FURTHER ORDERED that defendants file the above-referenced amended Schedule 13D with the Securities and Exchange Commission within ten days after the entry of this Order. Defendants may file an application with this Court for approval of any draft amendment prior to filing the same with the Securities and Exchange Commission, and shall file notice of compliance with this Order contemporaneously therewith. Upon defendants' filing an amendment with the Securities and Exchange Commission in compliance with this order, this preliminary injunction shall dissolve in two business days thereafter.
IT IS FURTHER ORDERED that defendants shall supply this Court, in writing and within five (5) days of this date, with a suggested amount to be posted by plaintiff as bond herein to indemnify defendants should the Court later determine they have been wrongfully enjoined. Defendants shall file simultaneously legal authority and affidavits or other documentation, in support of the bond amount requested.